IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.  Case No. 3:18cr42

KALI ROSE PROVOST,

Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Kali Rose Provost's Motion for Compassionate Release (the "Motion"). (ECF. No. 23.) Provost asks the Court for two forms of relief: (1) to grant compassionate release because "the global COVID-19 pandemic combined with Ms. Provost's medical conditions present an 'extraordinary and compelling reason'" for release or, in the alternative, (2) to "issue a non-binding recommendation that [the Bureau of Prisons] transfer her to home confinement." (Mot. 1, ECF No. 23.) The United States responded, conceding that Provost's "medical conditions constitute 'extraordinary and compelling reasons' for compassionate release," but arguing that the Court should deny the Motion because "the factors under 18 U.S.C. § 3553(a)[1] weigh strongly against early release"

---

[1] Section 3553(a) provides, in relevant part:

> The court shall impose a sentence sufficient, but not greater than necessary . . . . The court, in determining a particular sentence to be imposed, shall consider—
>
> (1) the nature and circumstance of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crime of the defendant; and

(the "Opposition"). (Opp'n 1, ECF No. 32.) The United States does not address Provost's alternative request for the Court to issue a nonbinding recommendation. (*See generally* Opp'n.) On July 15, 2020, Provost replied to the United States' response in opposition (the "Reply"). (Reply, ECF No. 33.)

This matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons that follow, the Court will grant the Motion for Compassionate Release and impose an additional twenty-four months of supervised release, for a total supervised release term of sixty months with a twelve month period of home confinement.

## **I. Background**

On April 3, 2018, the United States indicted Provost with knowingly, intentionally, and unlawfully possessing Oxycodone and Oxymorphone with the intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C) ("Count One"). (Indictment 1, ECF No. 7.) On June 4, 2018, Provost pled guilty to Count One before this Court and entered into a plea agreement with the United States. (Plea Agreement, ECF No. 11.) The Statement of Facts further explained that Provost "distributed" some of her prescribed Oxymorphone pills to her friend, and, within hours, "[h]er friend died . . . of Oxymorphone toxicity." (Statement of Facts 1–2, ECF No. 12.) In the Plea Agreement, the Parties recommended to the Court that Provost should serve ten years in prison for her offense:

> "jointly recommend[ing] to the Court a sentence of 10 years' imprisonment . . . [and] that this joint recommendation is a compromise between [Count One] and

---

> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effect manner[] . . . .

18 U.S.C. § 3553(a).

> the charge of distribution of Oxymorphone resulting in death, which carries a minimum mandatory term of 20 years' imprisonment . . . ."

(Plea Agreement 3, ECF No. 11.)

The Presentence Report ("PSR") calculated a total offense level of eight, a criminal history category of one, and a sentencing guidelines range of zero to six months of imprisonment and three years of supervised release. (PSR ¶¶ 89–90, ECF No. 15.) Probation Officer Simon nevertheless recognized the provisions set forth in the Plea Agreement and considered "the recommended sentence of 120 months['] imprisonment . . . justifiable." (*Id.* ¶ 91, ECF No. 15.) The PSR also noted Provost's substantial medical history. (*See id.* ¶¶ 60–65.) Provost reported suffering from several health conditions, including asthma, fibromyalgia, a heart murmur, hydrosyringomyelia, and pleural empyema as a result of pneumonia. (*Id.* ¶¶ 61–64.) Hydrosyringomyelia, a slowly progressive syndrome, "causes crevices in her spinal cord that fill with excess spinal fluid and cause disc compression which results in moderate to severe pain." (*Id.* ¶ 61.)

On September 21, 2018, the Court imposed a sentence of seventy-two months of imprisonment and three years of supervised release. (J. 2, ECF No. 21.) Provost currently serves her sentence at FMC Carswell. (Mot. 2.) Provost has served approximately twenty-seven months of her seventy-two-month sentence. (Reply 11.) The Bureau of Prisons calculates her release date as April 29, 2023. (Opp'n 3.)

On April 22, 2020, Provost "applied [to the Bureau of Prisons] for release under Compassionate Release." (*Id.*); (*see* Mot. Exhibit 6, "Email Request & Response Letter" 1, ECF No. 23-5). On April 27, 2020, "the warden denied her request" because Provost's "concern

3

about being potentially exposed to, or possibly contracting, COVID-19 does not currently warrant an early release from [her] sentence." (Mot. 3); (Email Request & Response Letter 2.)

On June 18, 2020, Provost filed the instant Motion asking the Court to either grant compassionate release or issue a nonbinding recommendation to the Bureau of Prisons that Provost should serve the remainder of her sentence on home confinement. (Mot. 1.) On July 3, 2020, the United States filed a response opposing compassionate release. (*See generally* Opp'n.) On July 15, 2020, Provost filed a reply, asking the Court to "order her immediate compassionate release." (Reply 11, ECF No. 33.) The Reply did not mention her second request that this Court issue a nonbinding recommendation. (*See generally* Reply.)

The Court now considers the pending Motion. For the reasons articulated below, the Court will grant Provost's first request after finding that the circumstances unique to this case warrant compassionate release. In doing so, granting compassionate relief renders moot Provost's second request for the Court to "issue [to the BOP] a non-binding recommendation" for home confinement. (Mot. 18.) Thus, the Court will not address the second requested form of relief further.

## II. The COVID-19 Pandemic Has Led Inmates to Seek Compassionate Release from Prison to Avoid Serious Illness or Death

In March 2020, the World Health Organization declared COVID-19 a worldwide pandemic. World Health Organization, *Timeline of WHO's response to COVID-19*, https://www.who.int/news-room/detail/29-06-2020-covidtimeline (last visited July 13, 2020). Following this declaration, individuals incarcerated within the Bureau of Prisons, including Provost, began petitioning courts around the country for compassionate release under the First Step Act, citing individual risk factors as they relate to COVID-19. (Mot. 9.)

The Bureau of Prisons ("BOP") currently has "4,353 federal inmates and 397 BOP staff who have confirmed positive test results for COVID-19 nationwide." Fed. Bureau of Prisons, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last visited July 24, 2020). The BOP reports that "5,676 inmates and 648 staff members have recovered[, while] 99 federal inmates and 1 BOP staff member death [have been] attributed to COVID-19 disease." *Id.* Relevant to the Motion at bar, Provost is serving her sentence at FMC Carswell, in Fort Worth, Texas. (Mot. 2.) According to BOP data, FMC Carswell has 519 inmates who have recently tested positive for COVID-19, and 3 have died. Fed. Bureau of Prisons, *supra*.

### III. Compassionate Release

#### A. Standard of Review: 18 U.S.C. § 3582(c)(1)(A)

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

As a preliminary matter, a petitioner generally must "exhaust his or her administrative remedies prior to bringing a motion before the district court." *Poulios v. United States*, No. 2:09cr109, 2020 WL 1922775, at *1 (E.D. Va. Apr. 20, 2020). A limited number of situations,

however, warrant waiver of the exhaustion requirement, such as when pursuit of "an administrative remedy would be futile," "exhaustion via the agency review process would result in inadequate relief[,]" or "pursuit of agency review would subject the petitioner to undue prejudice." *United States v. Robinson*, No. 3:10cr261, 2020 WL 4041436, at *3 (E.D. Va. July 17, 2020) (internal quotation marks and citations omitted).

After finding either that the petitioner meets the exhaustion requirement or that the situation justifies waiver, courts assess the merits of a motion for compassionate release under three prongs: (1) whether extraordinary and compelling reasons exist; (2) whether the defendant poses a danger to the community;[2] and, (3) whether the factors in 18 U.S.C. § 3553(a) would allow for a reduction in sentence. *See e.g.*, *Delacruz v. United States*, No. 18cv811, 2020 WL 3270503, at *1 (D.N.H. June 17, 2020); *United States v. Howard*, No. 4:15cr18, 2020 WL

---

[2] The relevant statute, 18 U.S.C. § 3582(c)(1)(A) requires, in part, a reduction in sentence to be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Section 1B1.13 of the United States Sentencing Guidelines provides the "applicable policy statement" and states, in relevant part:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction; or (B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
> (2) **The defendant is not a danger to the safety of any other person or to the community**, as provided in 18 U.S.C. § 3142(g); and
> (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13 (emphasis added).
Provost notes that this policy statement has not been updated since Congress passed the First Step Act. (Reply 3–4.) Nevertheless, courts in the Eastern District of Virginia have used Section 1B1.13 as part of the legal framework for considering the propriety of compassionate release during the COVID-19 pandemic. *See Poulios*, 2020 WL 1922775, at *2; *United States v. Feiling*, No. 3:19cr112, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020).

2200855, at *2 (E.D.N.C. May 6, 2020). The United States Sentencing Commission defines "extraordinary and compelling" in the Application Note 1 of U.S.S.G. § 1B1.13[3] and states "that a sentence may be modified due to the petitioner's medical condition, age, or family circumstances." *Poulios*, 2020 WL 1922775, at *2 (citing U.S.S.G. §1B1.13, n.1 (A)–(C)). The same application note references a "catch-all provision that allows for a sentence modification upon a showing of [a different] extraordinary and compelling reason." *Id.* (internal quotation marks omitted) (citing U.S.S.G. § 1B1.13, n.1 (D)).

During the COVID-19 pandemic, "courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his [or her] prison facility." *Feiling*, 2020 WL 1821457, at *7 (citing *United States v. Dungee*, No. 7:15cr00005, 2020 WL 1666470, at *2 (W.D. Va. Apr. 4, 2020); *United States v. Edwards*, 6:17cr00003, 2020 WL

---

[3] As explained in the Application Note,

Extraordinary and Compelling Reasons . . . .
(A) Medical Condition of the Defendant.
    (i) The defendant is suffering from a terminal illness . . . .
    (ii) The defendant is
        (I) suffering from a serious physical or medical condition,
        (II) suffering from a serious functional or cognitive impairment, or
        (III) experiencing deteriorating physical or mental health because of the aging process[] that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
(B) Age of the Defendant . . . .
(C) Family Circumstances . . . .
(D) Other Reasons.
    As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13, n.1 (A)–(D).

7

1650406, at *5 (W.D. Va. Ap. 2, 2020)). "Notably, 'the fear of contracting a communicable disease' proves insufficient to justify a sentence modification." *Id.* (emphasis omitted) (quoting *United States v. Clark*, No. 17-85-SDD-RLB, 2020 WL 1557397, at *4 (M.D. La. Apr. 1, 2020)). After finding whether extraordinary and compelling reasons exist and warrant a reduction of a sentence, the Court must consider the factors set forth in 18 U.S.C. § 3553(A), 18 U.S.C. § 3582(c)(1)(A), and evidence of rehabilitation and other post-conviction conduct. *See United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir. 2019) (requiring consideration of post-conviction evidence and statutory sentencing factors in the context of a sentence reduction sought pursuant to § 3582(c)(2)).

**B. The Court Will Grant Provost's Motion for Compassionate Release Because Provost Satisfies the Exhaustive Requirement, Her Medical Conditions Constitute An "Extraordinary and Compelling" Reason, She Does Not Pose a Danger to the Community, and the § 3553(a) Factors Render Compassionate Release Appropriate**

**1. Provost Meets the Exhaustive Requirement Because She Has Fully Exhausted Her Administrative Remedies**

Provost meets the exhaustive requirement before seeking relief from this Court. Generally, a defendant must exhaust "all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier" before a court can modify a sentence. 18 U.S.C. § 3582(c)(A)(1). On April 27, 2020, the Warden denied Provost's request for compassionate release in the instant case.[4] (Email Request & Response Letter 2.)

---

[4] In her Motion, Provost states that she applied for release on April 22, 2020. (Mot. 3.) Exhibit 6 indicates that Provost first emailed to apply for compassionate release on April 15, 2020, she sent a follow-up email on April 22, 2020, and she received a confirmation that her request "[was] being processed" on April 23, 2020. (Email Request & Response Letter 1.) Ultimately, the precise date in April when Provost applied for compassionate release does not impact the Court's analysis of the exhaustive requirement because these dates all occurred over thirty days ago.

8

Thus, it has been more than "30 days from the receipt of [a compassionate release] request by the warden." 18 U.S.C. § 3582(c)(A)(1). Furthermore, both Parties agree that Provost has met the exhaustive requirement. (Mot. 3–4, 6); (Opp'n 4). With this requirement satisfied, the Court now addresses the merits of Provost's request for compassionate release and will analyze each prong in turn.

### 2. Provost's Medical Conditions Constitute "Extraordinary and Compelling" Reasons That Could Warrant a Reduction in Sentence

First, Provost satisfies the "extraordinary and compelling" prong of 18 U.S.C. § 3582(c)(1)(A) because her numerous medical conditions likely increase the serious risks COVID-19 poses to her. (*See* Mot. 7–15); (Opp'n 11–14.) As an initial matter, courts have recognized that the COVID-19 pandemic creates an extraordinary and compelling reason for a sentence reduction where, absent the pandemic, the same medical conditions alone would not suffice. *See e.g., Dinning v. United States*, Nos. 2:12-cr-84, 2:12-cr-140, 2020 WL 1889361, at *2 (E.D. Va. Apr. 16, 2020) ("[T]he confluence of a petitioner's medical conditions and the COVID-19 pandemic may constitute an extraordinary and compelling reason for sentence modification under the catch-all provision, even when a petitioner's medical conditions would not qualify under Application Note 1 [of U.S.S.G. § 1B1.13.]") (internal quotation marks and citation omitted); *United States v. Rodriguez*, No. 2:03-cr-00271, 2020 WL 1627331, at *11 (E.D. Pa. Apr. 1, 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—[the defendant's] health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence.").

In the instant case, the Parties agree Provost's medical conditions combined with the COVID-19 pandemic constitute "extraordinary and compelling" reasons under 18 U.S.C. § 3582(c)(1)(A). (*See* Mot. 7–15); (Opp'n 11–14.) The Court also agrees. Provost's Motion,

9

the medical records provided under seal, and the PSR all describe Provost's long medical history with serious health conditions. (*See* Mot. 7–15); (Mot. Exhibit 2 "Bureau of Prisons Medical Records," ECF No. 28-1); (PSR ¶¶ 60–65.) Provost's asthma, chronic obstructive pulmonary disease (COPD), and hypertension represent areas of particular concern. Provost's medical records indicate that her asthma and COPD cause "shortness of breath" and "difficulty breathing." (Bureau of Prisons Medical Records 6, 8.) As recently as May 13, 2020, during an appointment with Bureau of Prisons Health Services, Provost reported "having more chest pain," coughing, feeling as though her hands were on fire, "trouble walking," and "pain in her neck and upper back." (*Id.* 1.) (*See e.g.*, Bureau of Prisons Medical Records 2–4.)

Relevant here, the Centers for Disease Control (CDC) lists COPD as a condition that "increase[s] [the] risk of severe illness from COVID-19" for individuals "of any age." Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, CORONAVIRUS DISEASE 2019 (COVID-19), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited July 14, 2020). The CDC lists moderate-to-severe asthma and hypertension as conditions that "might . . . increase[] [the] risk for severe illness from COVID-19." *Id.* This Court has previously detailed the risks hypertension poses as related to COVID-19. *Robinson*, 2020 WL 4041436, at *5 (observing the scientific authorities recognize the high comorbidity relationship between hypertension and COVID-19). Moreover, the Bureau of Prisons reports 519 positive cases and three inmate deaths at FMC Carswell, the facility where Provost currently serves her sentence. Fed. Bureau of Prisons, *supra*. In fact, the Bureau of Prisons' website indicates that, out of all facilities for

which it reports COVID-19 data, FMC Carswell unfortunately ranks the second highest in number of current positive cases. *Id.*

The record demonstrates that Provost advances more than just a generalized or abstract fear of COVID-19. *See Feiling*, 2020 WL 1821457, at *7. Because Provost's medical conditions represent a "particularized susceptibility to the disease" according to the CDC and the extremely high number of positive cases in FMC Carswell represent a "particularized risk," Provost's health concerns constitute an "extraordinary and compelling" reason for sentence reduction under 18 U.S.C. § 3582(c)(1)(A). *Id.*

### 3. Provost Does Not Pose a Danger to the Community

Provost satisfies the second prong of the compassionate release analysis because she does not pose a danger to the community. For this prong, Provost argues that the "nature of the one charge on her criminal record, and the fact that [she] is incarcerated at a minimum-security medical facility, show that she is not a danger to others." (Mot. 15.) The United States avers that, "[a]side from [Provost's] decision to provide a fatal substance to her friend, there are no other relevant considerations of public safety." (Opp'n 4.) Because no evidence before the Court suggests that Provost presents "a danger to the safety of any other person or to the community," Provost satisfies this prong for compassionate release. U.S.S.G. § 1B1.13.

### 4. Although the Offense Conduct Is Serious, Provost's Lack of Criminal History and the Health Concerns She Faces in FMC Carswell Support Granting Compassionate Release

Finally, Provost satisfies the third prong of the compassionate release analysis because the sentencing factors, when combined with the threat COVID-19 poses in light of Provost's serious health risks, weigh in favor of granting the Motion.

11

For the third step in the analysis, the Court must consider "the factors set forth in section 3553(a)" before granting compassionate release. 18 U.S.C. § 3582 (c)(1)(A). Provost argues "[t]he § 3553(a) factors ... weigh in favor of release" because she has "participated in programming" while incarcerated, which has taught her "how to manage her pain without the use of narcotics[,] and [she] is committed to remaining sober." (Mot. 17.) In contrast, the United States argues that "[e]arly release does not meet the factors of 18 U.S.C. § 3553(a)" because "such a short sentence ... would not adequately reflect the seriousness of her crime ... [or] respect the life of her young victim." (Opp'n 15.) After considering the statutory sentencing factors together with the dangerous health situation Provost currently faces in FMC Carswell, the Court finds compassionate release, coupled with a lengthened supervised release term, appropriate in this case.

First, as prescribed in the statute, the Court considers the "seriousness of the offense." 18 U.S.C. § 3553(a)(2)(A). The Court recognizes the tragic facts in this case: a young man died after ingesting the Oxymorphone that Provost distributed to him. (*See* Statement of Facts 1–2); (PSR ¶ 10.) The "seriousness" of the instant offense cannot be overstated. *See* 18 U.S.C. § 3553(a)(2)(A). The Court also notes that the mother of Jon Hile, the victim, provided a Victim Impact Statement, which read in part: "[N]othing I can say will adequately express how I feel about losing my son .... I pray for everyone involved, that we can find healing and an understanding of the changes that need to be made in society and in ourselves." (PSR ¶ 21.) The victim's mother exhibited grace in the most tragic of circumstances.

Second, the Court considers the need for a sentence "to promote respect for the law" and "to protect the public from further crimes of the defendant." *See* 18 U.S.C. § 3553(a)(2)(A) and (C). Provost came before the Court with no criminal history. (PSR ¶¶ 38–39.) Provost has

12

served over two years of her sentence, and the record before the Court shows no disciplinary issues while Provost has been in custody. (Mot. Exhibit 4, "Individualized Reentry Plan" 1, ECF No. 23-3); (Reply 11.) Provost has also participated in drug education and other coursework while incarcerated. ("Individualized Reentry Plan" 1.) Taking steps toward rehabilitation while in prison often demonstrates that an inmate no longer poses a threat to society, and weighs in favor of him or her receiving consideration for early release. *See, e.g., Martin*, 916 F.3d at 396–97 (vacating and remanding a district court opinion for failing to take the inmate's rehabilitation steps, including obtaining a GED, tutoring other inmates, and exhibiting "exemplary behavior," into account when considering her motion for a sentence reduction); *see also Robinson*, 2020 WL 4041436, at *6 (finding that an inmate who exhibited "significant rehabilitation since the imposition of his sentence" by completing the BOP's RDAP and investing in his own and his peers' treatment qualified for compassionate release). Taken together, these facts suggest that compassionate release at this time would not offend the need "to promote respect for the law" and "protect the public." 18 U.S.C. § 3553(a)(2)(A) and (C).

Ultimately, the serious health concerns Provost faces in FMC Carswell renders further incarceration in this prison facility inappropriate. *See United States v. Bright*, No. 2:15cr15-005, 2020 WL 2537508, at *1–2 (W.D. Va. May 19, 2020) (granting compassionate release to a defendant serving his sentence in facility considered "a Covid-19 hotspot," who had a "limited criminal history" and suffered from COPD, asthma, and high blood pressure). The Court must balance the health risks Provost faces when weighing the circumstances of this case and the relevant sentencing factors. *See, e.g., United States v. Edwards*, No. 6:17-cr-03, 2020 WL 1650406, at *6 (W.D. Va. Apr. 2, 2020) ("Had the Court known when it sentenced Defendant in 2018 that the final 18 months of his term in a federal prison would expose him to a heightened

and substantial health risk presented by the COVID-19 pandemic on account of Defendant's compromised immune system, the Court would not have sentenced him to the latter 18 months."). The Court sentenced Provost to six years' imprisonment and has grave concerns for her health should she remain incarcerated.

After due consideration, the Court will grant compassionate release, impose an additional twenty-four months to Provost's terms of supervised release term for a total of sixty months, and impose as a condition of supervised release twelve months of home confinement.[5] This sentence both constrains Provost's liberty consistent with the § 3553(a) factors and recognizes the health concerns the COVID-19 outbreak raises specifically for Provost in FMC Carswell. *See United States v. Fletcher*, No. TDC-05-0179-01, 2020 WL 3972142, at *4 (D. Md. July 13, 2020).

---

[5] The Court recognizes that it cannot order Provost's release to home confinement as part of her incarceration. Such authority rests with the BOP. *See* 18 U.S.C. § 3624(c)(2) (authorizing the BOP "to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months"). "The Coronavirus Aid, Relief, and Economic Security ("CARES") Act authorizes the BOP—not courts—to expand the use of home confinement under 18 U.S.C. § 3624(c)(2)." *United States v. Fantz*, No. 5:14cr32, 2020 WL 3492028, at *1 (E.D.N.C. June 26, 2020) (internal quotation marks and citations omitted).

Nevertheless, the Court imposes twelve months of home confinement as a condition of her Supervised Release. Appellate courts had indicated that home confinement may be imposed as a term of supervised release even before the onset of the COVID-19 pandemic. *See United States v. Kremer*, 280 F.3d 219, 220-21 (2d Cir. 2002) (upholding the district court's decision to extend the defendant's term of supervised release by one year and impose "three months of home detention as a condition of supervised release" after finding the defendant violated supervised release); *see also United States v. Marcano*, 525 F.3d 72, 72–74 (1st Cir. 2008) (upholding the district court's decision, during a revocation proceeding, to sentence the defendant to a new term of imprisonment and "one year of supervised release, during the first 180 days of which he was to be subject to limited home confinement" because the "the total period of imprisonment . . . [did] not exceed the statutory maximum term of imprisonment of two years"). Although these courts are outside the jurisdiction of the United States Court of Appeals for the Fourth Circuit, the Court finds persuasive these out-of-circuit authorities.

## IV. Conclusion

In sum, Provost satisfies all three prongs of a compassionate release analysis. For the foregoing reasons, the Court will grant Provost's Motion for Compassionate Release. (ECF No. 23.)

An accompanying order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Date: July 24, 2020
Richmond, Virginia